UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**AARON D. YOUNKER,**

    **Plaintiff,**

    v.

                                          Civil Action 2:11-cv-00749
                                          Judge Gregory L. Frost
                                          Magistrate Judge Elizabeth P. Deavers

**OHIO STATE UNIVERSITY MEDICAL
CENTER,** *et al.***,**

    **Defendants.**

## ORDER AND REPORT AND RECOMMENDATION

      This matter is before the United States Magistrate Judge for consideration of Defendants' Motion for Summary Judgment.  (ECF No. 90.)  Plaintiff filed his Response in Opposition to Defendants' Motion on January 10, 2013.  (ECF No. 96.)  Defendants filed their Reply on January 18, 2013.  (ECF No. 97.)  Plaintiff filed a Sur-Reply on February 4, 2013.  (ECF No. 98.)  Also before the Court is Defendants' Motion to Strike Plaintiff's Sur-Reply.  (ECF No. 100.)  For the reasons that follow, Defendants' Motion to Strike is **DENIED**.  It is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED** and that Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE**.

**I.**

      Plaintiff, a former inmate of the Chillicothe Correctional Institution ("CCI"), who proceeds without the assistance of counsel, alleges that prison officials acted with deliberate indifference toward his serious medical needs in violation of the Eighth Amendment to the United States Constitution.

A.     **Events Giving Rise to Complaint**

Plaintiff underwent hernia surgery in 2010 at The Ohio State University Medical Center. (Compl. 8, ECF No. 47.)  According to the Complaint, Plaintiff's surgery failed due to a defective mesh and the hernia returned.  Plaintiff alleges that his conditioned subsequently worsened, causing him severe pain and swelling.  Prison officials purportedly refused to send Plaintiff back to the hospital or to another facility that could address his serious medical need.  According to Plaintiff, prison officials refused outside treatment because Defendants Gary Mohr, the Director of the Ohio Department of Rehabilitation and Corrections ("ODRC"), and Stuart Hudson, the Chief of the ODRC Bureau of Medical Services, instituted a policy prohibiting outside treatment except in life-threatening situations.  Plaintiff alleges that Defendants implemented the policy to cut costs.

B.     **Plaintiff's Grievances**

Plaintiff filed numerous grievances related to CCI staff's refusal to transfer him to an outside facility for medical treatment, only one of which he exhausted prior to the filing of his Complaint.[1]  On March 18, 2011, Plaintiff filed an informal complaint requesting transfer to a facility that could address the failed surgery and return of the hernia. (Mot. Ex. 1, ECF No. 90-2.)  Plaintiff complained that Alice Ault, a medical professional within the CCI, refused to authorize Plaintiff's transfer to an outside facility for treatment.  *Id.*  Ms. Ault purportedly stated that she wished "[Plaintiff] had money" to address the situation.  *Id.*  He further alleged that a prison doctor confirmed that his hernia had returned, and asked Plaintiff how much longer he

---

[1]Because the non-exhausted grievances do not affect the outcome of Defendants' Motion, the Court addresses only the grievance that Plaintiff exhausted.

had until his sentence expired. *Id.* Plaintiff expressed concern that his "insides will grow into the mesh," and again requested transfer to another facility. *Id.* Plaintiff's informal complaint was denied. *Id.*

Following the denial of his informal complaint, Plaintiff filed a notification of grievance with the inspector of institutional services date-stamped March 30, 2011. (Mot. Ex. 2, ECF No. 90-3.) Plaintiff complained that prison medical staff failed to repair the hernia. *Id.* He indicated that his informal complaint was his way of informing the medical department of the constant pain he was suffering due to his condition. He again requested a transfer to a hospital or another facility to treat his hernia. The inspector denied Plaintiff's grievance on April 1, 2011, indicating that "[m]edical practitioners for ODRC believe [your condition] can be managed without surgery at this time." *Id.* at Ex. 2, ECF No. 90-3.

In the third and final step of the grievance process, date-stamped by the institution on April 8, 2011, Plaintiff filed an appeal to the chief inspector. (Mot. Ex. 4, ECF No. 90-5.) He again complained that medical staff was refusing to treat his condition adequately, and reiterated his request for outside medical attention. *Id.* The chief inspector denied Plaintiff's appeal on August 22, 2011. *Id.* at Ex. 5, ECF No. 90-6. In doing so, the chief inspector stated that "medical staff at your facility is giving you the proper care within ODRC guidelines." *Id.*

At no point in the grievance process did Plaintiff complain that Mohr or Hudson had instituted a policy of unconstitutionally denying medical care. Nor did he specifically name Mohr or Hudson at any of the three steps of the grievance process.

**C.     Procedural History**

Plaintiff filed his Complaint on August 26, 2011. (ECF No. 5.) In his initial Complaint,

Plaintiff purported to assert claims against The Ohio State University and one of its physicians related to the failure of the initial hernia surgery. (Compl. 5, ECF No. 5.) He also sought to assert a claim against the designer of the allegedly-defective surgical mesh that doctors inserted during the surgery. *Id.* at 1. The Court dismissed Plaintiff's claims against these three Defendants for lack of subject matter jurisdiction and failure to state a claim after conducting an initial screen pursuant to 28 U.S.C. § 1915(e). (ECF Nos. 6 and 10.) Consequently, the only remaining claims are those against Defendants Mohr and Hudson for deliberate indifference to serious medical needs in violation of the Eighth Amendment.[2] Plaintiff alleges that Defendants implemented an institution-wide policy of refusing outside medical care except in life-threatening situations. According to Plaintiff, this institution-wide policy caused CCI staff to deny Plaintiff outside treatment for his hernia. On November 30, 2012, Defendants filed the instant Motion for Summary Judgment, contending that Plaintiff's claims must be dismissed for failure to exhaust administrative remedies.

## II.

As a preliminary matter, Defendants' Motion to Strike Plaintiff's Sur-Reply is **DENIED**. (ECF No. 100.) On February 4, 2013, Plaintiff filed a Sur-Reply with respect to Defendants' Motion for Summary Judgment. (ECF No. 98.) In his Sur-Reply, Plaintiff reiterates that although he did not specifically name Mohr and Hudson in his grievances, they nevertheless should have been on notice of their unconstitutional policy of denying medical care. *Id.* He also

---

[2] Plaintiff added the claim against Defendant Mohr in his April 25, 2012 Amended Complaint. (ECF No. 47.)

maintains that once he is released from incarceration,[3] this action is no longer subject to exhaustion requirements under the PLRA.[4] *Id.* Defendants seek an Order striking the Sur-Reply for noncompliance with Southern District of Ohio Local Rule 7.2.[5] (ECF No. 100.) Although the Court acknowledges Defendants' contention that Plaintiff's Sur-Reply fails to comply with Rule 7.2, it declines to strike it from the record. Nothing in Plaintiff's Sur-Reply changes the substance of his arguments or otherwise prejudices Defendants.

### III.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's

---

[3]Plaintiff has been released from incarceration since the filing of his Sur-Reply.

[4]As addressed more fully below, Plaintiff is mistaken on this point.

[5]Southern District of Ohio Local Rule 7.2 provides as follows:

Any memorandum in opposition shall be served within twenty-one (21) days from the date of service set forth in the certificate of service attached to the Motion. Failure to file a memorandum in opposition may be cause for the Court to grant any Motion, other than one which would result directly in entry of final judgment or an award of attorney fees. A reply memorandum may be served within fourteen (14) days after the date of service of the memorandum in opposition. *No additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown.*

S.D. Ohio Civ. R. 7.2(a)(2) (emphasis added)

5

assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, No. 10–3110, 2011 WL 4469612, at *3 (6th Cir. Sept. 28, 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stanberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## IV.

Defendants assert that Plaintiff's claims must be dismissed for failure to exhaust administrative remedies. More specifically, Defendants Hudson and Mohr assert that Plaintiff failed to specifically name them in his grievances, which constitutes a failure to exhaust. Plaintiff does not dispute that he failed to name the Defendants in his grievances. Rather, he contends that Defendants Mohr and Hudson nevertheless should have been on notice of their unconstitutional policy of denying outside medical treatment in non-life-threatening situations.

The Court concludes that Defendants have met their burden of establishing that Plaintiff

6

failed to exhaust his administrative remedies with regard to Defendants Mohr and Hudson. Under 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act ("PLRA"), "a prisoner confined in any jail, prison, or other correctional facility" may not bring an action challenging "prison conditions" under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (citation omitted)). This mandatory exhaustion requirement applies to all lawsuits relating to prison conditions, regardless of the nature of the wrong or the relief sought. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). To properly exhaust, prisoners must "tak[e] advantage of each step the prison holds out for resolving the claim internally and . . . follow the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010); *Jones*, 549 U.S. at 217–18 (noting that proper exhaustion requires "[c]ompliance with prison grievance procedures"). Where, as here, an inmate "affirmatively endeavors to comply" with the administrative procedures, a court must "analyze[] whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 224 (6th Cir. 2011)).

Ohio has established a procedure for resolving inmate complaints. Ohio Admin. Code § 5120–9–31. To properly exhaust a claim seeking relief "regarding any aspect of institutional life that directly and personally affects the [inmate]," an inmate at an ODRC facility must comply

with its three-step grievance system. *Id*. For the first step, the inmate must submit an informal complaint to the staff member or to the direct supervisor of the staff member or to the department most directly responsible over the subject matter with which the inmate is concerned. Ohio Admin. Code § 5120–9–31(K)(1). If the inmate is not satisfied with the results at the first step, he may take the second step by filing a formal grievance with the inspector of institutional services at the prison where he is confined. Ohio Admin. Code § 5120–9–31(K)(2). That inspector will investigate the matter and issue a written response to the inmate's grievance within fourteen calendar days of receipt. *Id*. If the inmate is still dissatisfied, he may pursue the third step, which is an appeal to the office of the Chief Inspector of ODRC. Ohio Admin. Code § 5120–9–31(K)(3). An inmate does not exhaust his remedies under § 5120-9-31 until he has received a decision in an appeal to the office of the Chief Inspector.

"Although 'exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances,' . . . a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (quoting *Jones*, 549 U.S. at 218). The United States Court of Appeals for the Sixth Circuit has recognized an exception to the general rule requiring adherence to the applicable grievance procedures when "prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits." *Reed–Bey*, 603 F.3d at 324.

At the time Plaintiff filed his grievance, Section 5120–9–31(K) set forth the specificity requirement as follows:

> Informal complaints and grievances must contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable, *the name or names*

8

> *of personnel involved and the name or names of any witnesses.* Specificity of the complaint provides institutional staff the opportunity to investigate the complaint and to take corrective action to address a valid complaint. In the event an inmate does not know the identity of the personnel involved, a "John/Jane Doe" complaint may be filed. However, the complaint shall be specific as to dates, times, places, physical descriptions of any unidentified personnel and the actions of said personnel giving rise to the complaint.

Ohio Admin. Code § 5120–9–31(K) (emphasis added).[6]

Applying the foregoing authority, the Undersigned concludes that Plaintiff failed to properly exhaust his administrative remedies with regard to Defendants Mohr and Hudson. Although the relevant policy clearly required Plaintiff to identify the individuals involved in the purported denial of his Constitutional rights, or at least directed that he reference a John or Jane Doe, he failed to mention either Mohr and Hudson. Instead, his grievance is directed only at Alice Ault and makes no mention of any policy, formal or informal, instituted by Mohr or Hudson. *See Sullivan v. Kasajara*, 316 F. App'x 469, 470 (6th Cir. 2009) (affirming dismissal for failure to exhaust where the plaintiff failed to comply with the Michigan agency's procedural rule requiring the naming of each person against whom the plaintiff grieved); *King v. Banks*, No. 2:10-cv-852, 2012 WL 1068103, at *4 (S.D. Ohio Mar. 29, 2012) (finding that inmate had failed to exhaust his administrative remedies because his grievances did not "mention . . . defendants

---

[6] Prior to 2008, versions of § 5120-9-31 did not require such specificity. Thus, earlier decisions rejected the assertion that an Ohio inmate needed to specifically name a defendant to exhaust his or her administrative remedies. *See, e.g., Fisher v. Ohio Dep't. Rehab. & Corr.*, No. 1:06-cv-559, 2007 WL 4248152, at *4 (S.D. Ohio Nov. 30, 2007) (concluding that the plaintiff "was not required to specifically name [the defendants] in his grievance in order to exhaust his administrative remedies" because "[t]he three-step grievance process set forth in O.A.C. § 5120-9-31 contains no specific requirement that an inmate name a specific individual in the grievance"); *Evans v. Collins*, No. 1:06-cv-342, 2007 WL 641980, at *3 (S.D. Ohio Feb. 27, 2007) (same).

9

specifically, nor [did they] give enough factual context [such] that [the] defendants would be on notice" of the plaintiff's claims); *Leonard v. Mohr*, No. 2:11–cv–152, 2012 WL 423771, at *5 (S.D. Ohio Feb. 9, 2012) (same).  Further, the *Reed-Bey* exception does not apply here because the record contains no evidence that CCI prison officials considered the propriety of the alleged conduct of Mohr and Hudson.  Nor does the record indicate that prison officials were even aware that Plaintiff was challenging a broader policy of denying outside medical care generally.  Rather, Plaintiff's grievances reference his individual circumstance without mention of any broader, institution-wide policy.

In addition, the PLRA's exhaustion requirement applies to Plaintiff's Complaint even though he has been released from incarceration.  In *Cox v. Mayer*, 332 F.3d 422 (6th Cir. 2003), the Sixth Circuit Court of Appeals held that a complaint is subject to the PLRA's exhaustion requirement even if the plaintiff is later released from incarceration.  *Cox*, 332 F.3d at 425.  Relying on the language of § 1997e(a), the Court in *Cox* concluded that the exhaustion requirement applies to any plaintiff who is "confined in any jail, prison, or other correctional facility" *at the time he files his complaint*, regardless of whether he is subsequently released.  *Id.*  If his complaint is dismissed without prejudice for failure to exhaust after he has been released, the former inmate may simply re-file his Complaint without being subject to the exhaustion requirement.  *Id.* at 427.  Thus, even though he is no longer incarcerated, Plaintiff's failure to exhaust his administrative remedies compels dismissal of his Complaint without prejudice.  Plaintiff may, if he so chooses, re-file his Complaint.  Because he is no longer "confined in any jail," his re-filed Complaint will not be subject to the PLRA's exhaustion requirement.

The Court acknowledges the conceptual difficulty in dismissing Plaintiff's claims on the

10

seemingly technical basis that he failed to allege that prison staff acted pursuant to an institution-wide policy.  The purpose of the exhaustion requirement, after all, is to allow "a prison to address complaints about the program it administers before being subjected to suit, reduc[e] litigation to the extent complaints are satisfactorily resolved, and improv[e] litigation that does occur by leading to the preparation of a useful record."  *Jones*, 549 U.S. at 219; *see also Reed-Bey*, 603 F.3d at 324) (citing *Woodford*, 548 U.S. at 94-95) ("The point of the PLRA exhaustion requirement is to allow prison officials a 'fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court.").  "Requiring inmates to exhaust prison remedies in the manner the State provides – by, say, identifying *all* relevant defendants – not only furthers these objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process." *Id.* at 324-25 (emphasis in original).  The requirement that Ohio inmates name the individuals involved in the denial of constitutional rights serves a similar purpose: "Specificity of the complaint provides institutional staff the opportunity to investigate the complaint and to take corrective action to address a valid complaint."  Ohio Admin. Code 5120-9-31.

  Here, however, dismissing Plaintiff's claims does not substantially further these objectives.  First, although Plaintiff merely challenged the purported application of the alleged policy rather than its existence, his grievances nevertheless provided the CCI the opportunity to address its alleged policy of denying outside care prior to being subjected to suit.  *Jones*, 549 U.S. at 219.  Likewise, challenging the application of an institution-wide policy, as Plaintiff

11

purportedly did here, allows prison officials the opportunity to correct any errors that need to be corrected. *Reed-Bey*, 603 at 324. The Sixth Circuit has expressed doubt as to whether Ohio's requirement of naming all those involved is necessary when an inmate challenges an institution-wide policy. *See Kramer v. Wilkinson*, 302 Fed. App'x 396, 399 (6th Cir. 2008) ("[I]t is unclear whether a grievance regarding an institutional decision to require medication requires named defendants.") The only arguable purpose of exhaustion that could be furthered in this case is the creation of a more robust record. Had Plaintiff challenged the purported institution-wide policy of denying outside treatment in non-life-threatening situations, prison officials would have had the opportunity to admit or deny the existence of such a policy, which would have been made part of the record.

Nevertheless, the Sixth Circuit Court of Appeals also requires that prison grievances provide "fair notice" of a potential claim, *LaFountain v. Martin*, 334 Fed. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)), which further weighs toward dismissal of Plaintiff's claims for failure to exhaust. *See also King*, 2012 WL 1068103, at *4 (finding a failure to exhaust partly because grievances failed to provide fair notice of plaintiff's claims). Plaintiff failed to include in his grievances not only the names of Mohr and Hudson, but also the allegation that they instituted a cost-saving measure of unconstitutionally denying medical care. Consequently, Plaintiff's grievances did not provide Defendants with fair notice of his potential claims, which further compels dismissal for failure to exhaust his administrative remedies. *LaFountain*, 334 Fed. App'x at 740. Accordingly, Plaintiff's claims must be dismissed.

**V.**

For the foregoing reasons, Defendants' Motion to Strike Sur-Reply is **DENIED**. (ECF No. 100.) It is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE**. (ECF No. 90.)

**VI.**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: June 25, 2013 /s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge